# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46512-4-II |
| Respondent, | |
| v. | |
| PAUL JASON BURKS, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. – Paul Jason Burks appeals his conviction for violating a no-contact order.  He argues that the trial court erred (1) when it entered Finding of Fact V in its CrR 3.6 order denying his motion to suppress because the finding was not supported by substantial evidence and (2) when it denied his motion to suppress because the extended traffic stop exceeded the scope of RCW 46.61.021 and violated his constitutional rights.

We hold that (1) the trial court's Finding of Fact V was supported by substantial evidence and (2) the trial court properly denied Burks's motion to suppress because the officer had a reasonable, articulable suspicion to believe that Burks was violating the no-contact order, the officer had an independent reason to request Burks's identification, and the extended traffic stop was lawful.  We affirm.

## FACTS

On May 12, 2014, during his regular patrol shift, Bremerton City Police Officer Christopher R. Faidley conducted a traffic stop of a Honda Civic on Wheaton Way, after his radar clocked the vehicle traveling 41 mph in a 30 mph zone.  When Faidley made contact with the

driver, Tanya Bierlein, he noticed that the passenger, a tall, thin, black male, was attempting to cover his face with his left hand. Upon returning to his patrol car, Faidley entered Bierlein's information into his dashboard computer. His search indicated that Bierlein was a protected party in a no-contact order. The description of the respondent, identified as Paul Burks, matched the passenger in Bierlein's vehicle. In his incident investigation report, Faidley stated that Burks was the named respondent in the no-contact order.

Faidley returned to Bierlein's vehicle to investigate the potential no-contact order violation, told the passenger he matched the description of the respondent in the no-contact order, and asked for the passenger's identification. The passenger did not have his identification on him, and gave Faidley the name "Alexander Ashiene." Verbatim Report of Proceedings (VRP) (July 7, 2014) at 31. Unprompted, the passenger then stated, "I get confused with Paul Burks all the time." VRP (July 7, 2014) at 10. Faidley radioed dispatch who came back with no record of Ashiene. Faidley returned to his patrol car and located a photograph of Paul Burks on his computer; that photograph matched the vehicle's passenger. Faidley then arrested Burks for violating the no-contact order. The entire stop lasted about 13 minutes from when Faidley pulled Bierlein over to Burks arrest.

The State charged Burks with one count of felony violation of a court order, RCW 26.50.110.5, with a special allegation of domestic violence. Pre-trial, Burks moved to suppress the evidence obtained during the traffic stop under CrR 3.6, citing the Fourth Amendment and article I, section 7 of the state constitution. At the July 7 hearing on the motion to suppress, Faidley, Bierlein, and Burks testified. The trial court ruled that because Faidley had a reasonable, articulable suspicion to believe that Burks was violating the no-contact order, Faidley had an

independent reason to request Burks's identification, and the extended traffic stop was lawful.

The trial court denied Burks's motion to suppress and entered the following pertinent findings of

fact:

> . . . .
>
> V.     That when [Faidley] ran Ms. Bierlein's information, [and] found out that she was the protected party in a no contact order with respondent Paul Burks.
>
> . . . .
>
> XII.    That when [Faidley] returned to the car a second time, he asked [the passenger] for his name.
>
> XIII.   That [the passenger] told [Faidley] that he did not have his identification on him and [the passenger] told [Faidley] his name was Alexander Ashiene.
>
> XIV.    That [the passenger] volunteered that he is often mistaken for Paul Burks, a name he brought up without any prompting from [Faidley].
>
> XV.     That [Faidley] had Cencom run the name "Alexander Ashiene" and he did not find any record of him in Washington or Oregon.
>
> XVI.    That [Faidley] then went back to his car and was able to locate a photo of Paul Burks on his computer.
>
> XVII.   That it was clear that Paul Burks was the person sitting in the passenger seat of Ms. Bierlein's car.

Clerk's Papers (CP) at 95-96.

On July 21, 2014, based on stipulated facts, the trial court convicted Burks as charged and

sentenced him to 8 months confinement and 12 months of community supervision. Burks appeals.

ANALYSIS

STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence to determine whether

substantial evidence supports the trial court's findings of fact and whether those findings, in turn,

support the trial court's conclusions of law which we review de novo. *State v. Homan*, 181 Wn.2d

102, 105-06, 330 P.3d 182 (2014). Substantial evidence is evidence sufficient to persuade a fair-

minded person of the finding's truth. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). We treat unchallenged findings of fact as verities on appeal. *Stevenson*, 128 Wn. App. at 193. On issues of credibility, we defer to the trier of fact. *Homan*, 181 Wn.2d at 106.

FINDING OF FACT

Burks challenges only Finding of Fact V from the CrR 3.6 hearing, which states, "That when Officer Faidley ran Ms. Bierlein's information, he found out that she was the protected party in a no contact order with respondent Paul Burks." CP at 95. He argues that this finding is not supported by substantial evidence. We disagree.

Burks argues that, at the CrR 3.6 hearing, Faidley testified only that he discovered that the other party in the no-contact order was "an individual," and that Faidley received no other information about Burks during the initial traffic stop. Br. of Appellant at 7. Faidley did testify that, after pulling Bierlein over and running her information, he discovered there "was an order between [Bierlein] and an individual." VRP (July 7, 2014) at 9. However, Faidley also testified that dispatch's description of the respondent in that order matched the description of the passenger in Bierlein's car. Faidley further testified that when he returned to the car, requested the passenger's identification, and informed Bierlein and the passenger that he was "ensur[ing] that [a] protection order violation wasn't occurring," that the passenger stated, "I get confused with Paul Burks all the time." VRP (July 7, 2014) at 10. While Faidley told the passenger that he matched the description of the respondent in the protection order, Faidley had not mentioned the respondent's name when he requested the passenger's identification. Faidley stated that after he was unable to locate records for the false name the passenger gave him, he went to his vehicle to locate a photograph of Paul Burks, and that the photograph he found of Paul Burks matched the

passenger in Bierlein's car. There is substantial evidence in the record to support Finding of Fact V that Faidley discovered that Paul Burks was the respondent in the no-contact order. Therefore, Burks's challenge to Finding of Fact V fails.

## MOTION TO SUPPRESS

Next, Burks argues that the extended traffic stop was unlawful because Faidley did not have reasonable, articulable suspicion that Burks was engaged in criminal activity. He argues that because the stop was unlawful, the trial court should have suppressed the evidence obtained during the traffic stop. Faidley's extended stop of Bierlein's car was lawful because Faidley had a reasonable, articulable suspicion that the no-contact order was being violated. The trial court properly ruled that the evidence was admissible.

Warrantless searches and seizures generally are per se unreasonable. *See* U.S. CONST. amend. IV; CONST. art. I, § 7; *State v. Kennedy*, 107 Wn.2d 1, 4-5, 726 P.2d 445 (1986). However, "'not every encounter between a police officer and a citizen is an intrusion requiring an objective justification.'" *State v. Rankin*, 151 Wn.2d 689, 695, 92 P.3d 202 (2004) (quoting *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S. Ct. 1870, 64 L.Ed.2d. 497 (1980)). An automobile passenger is not seized when a police officer merely stops the vehicle in which the passenger is riding. *Rankin*, 151 Wn.2d at 695. Vehicle passengers are unconstitutionally detained when an officer requests identification "'unless other circumstances give the police independent cause to question [the] passengers.'" *Rankin*, 151 Wn.2d at 695 (quoting *State v. Larson*, 93 Wn.2d 638, 642, 611 P.2d 771 (1980)) (alternation in original). An "'independent basis'" exists if the officer has an "'articulable suspicion of criminal activity.'" *State v. Brown*, 154 Wn.2d 787, 796,

117 P.3d 336 (2005) (quoting *Rankin*, 151 Wn.2d at 699). A police officer's request for a name is the same as a "request for 'identification.'" *State v. Brown*, 154 Wn.2d at 797.

RCW 46.61.021(2) allows an officer to detain a person in a traffic stop for a "reasonable time necessary" to (1) identify the person, (2) check for outstanding warrants, and (3) check the status of the person's license and the person's insurance identification card.[1]

Our Supreme Court has held that an officer in a traffic stop may not request identification from a passenger for investigatory purposes absent an independent reason to justify the request. *Larson*, 93 Wn.2d at 642, 645; *Rankin*, 151 Wn.2d at 699. In *Larson*, officers observed several individuals sitting in an illegally parked vehicle in a high crime area and near a closed park late at night. *Larson*, 93 Wash. 2d at 639. As the officer approached the vehicle, the driver began to drive away. *Larson*, 93 Wash. 2d at 640. The officers stopped the car, and asked the driver and passengers for their identification. *Larson*, 93 Wash. 2d at 640. Complying with the request, one of the passengers opened her purse, and the officer observed a plastic bag of marijuana in the purse and arrested the passenger. *Larson*, 93 Wash.2d at 640. Our Supreme Court held that the officer's request for the passenger's identification, absent a reasonable suspicion that she was involved in criminal conduct, violated the Fourth Amendment of the United States Constitution and article I, section 7 of Washington's Constitution. *Larson*, 93 Wash.2d at 645.

Similarly, in *Rankin*, police officers asked passengers for identification for the sole purpose of conducting a criminal investigation without a reasonable, articulable suspicion of criminal activity, and the officers detained the passengers without a warrant. *Rankin*, 151 Wn.2d at 699.

---

[1] There is no dispute that the initial traffic stop was justified and proper.

Our Supreme Court held that those seizures were unlawful, and required suppression of the evidence. *Rankin*, 151 Wn.2d at 699.

Here, the issue is whether Faidley had a reasonable, articulable suspicion of criminal activity in order to request Burks's identification and extend the traffic stop. Faidley pulled Bierlein over for driving 41 mph in a 30 mph zone. Faidley observed the passenger in the vehicle attempting to hide his face with his left hand. When Faidley ran Bierlein's information, he discovered that she was the protected person in a no-contact order. He also discovered that the description of the respondent in that no-contact order matched that of the passenger, and he suspected that there was a violation of the no-contact order. When he returned to the vehicle, Faidley asked the passenger for identification; the passenger said he did not have identification, gave a false name, and said that he was often "confused with a Paul Burks." VRP (July 7, 2014) at 10. Faidley could not verify the false name, so he then pulled up Burks's photograph on the computer, and confirmed Burks's identity as the passenger and as the respondent in the no-contact order. The entire stop was brief, lasting about 13 minutes. Unlike the police officers in *Rankin* or *Larson,* Faidley had an independent basis to request Burks's identification because at the time of the request, Faidley had a reasonable suspicion of criminal activity. Thus, the extended traffic stop was lawful.

CONCLUSION

We hold that (1) substantial evidence supports the trial court's Finding of Fact No. V and (2) the trial court properly denied Burks's motion to suppress because the officer had

a reasonable, articulable suspicion to believe that Burks was violating the no-contact order, the officer had an independent reason to request Burks's identification, and the extended traffic stop was lawful. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

LEE, J.